UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

SECURITIES AND EXCHANGE
COMMISSION,

              Plaintiff,

              v.

DANNY GARBER, MICHAEL MANIS,
KENNETH YELLIN, JORDAN FEINSTEIN,
ALUMA HOLDINGS LLC, AZURE TRADING
LLC, COASTAL GROUP HOLDINGS, INC.,
GREYHAWK EQUITIES LLC, LEONIDAS
GROUP HOLDINGS LLC, THE LEONIDAS
GROUP, LLC, NISMIC SALES CORP., THE
OGP GROUP LLC, PERLINDA
ENTERPRISES LLC, RIO STERLING
HOLDINGS LLC, SLOW TRAIN HOLDINGS
LLC, and SPARTAN GROUP HOLDINGS
LLC,

              Defendants.

------------------------------------------------------------X



**OPINION AND ORDER**

12 Civ. 9339 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

**I.    INTRODUCTION**

       The Securities and Exchange Commission ("SEC") brings this action against, *inter alia*, Danny Garber, Kenneth Yellin, Jordan Feinstein (collectively, "Individual Defendants"), the OGP Group LLC, Rio Sterling Holdings LLC, and Slow Train Holdings LLC ("Entity Defendants" and, together with Individual

Defendants, "Defendants").[1]  The SEC alleges that Defendants purchased over a billion unregistered shares in dozens of penny stock companies ("the Penny Stock Companies") and resold the shares to the investing public without complying with the registration provisions of the federal securities laws by falsely claiming that their purchases were exempt from registration under either Rule 504(b)(1)(iii) of Regulation D or Rule 144 of the Securities Act.[2]

The SEC asserts that Defendants' conduct violated: Sections 5(a) and 5(c) of the Securities Act (Count One); Section 17(a) of the Securities Act (Count Two); and Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder (Count Three).[3]  Defendants move under Federal Rule of Civil Procedure 12(b)(6)[4] to dismiss the SEC's claims for violation of Section 10(b) and

---

[1] The SEC brings this action pursuant to its authority under Section 20(b) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77t(b), and Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78(u)(d).  Additional defendants who do not join in this motion are: Individual Defendant Michael Manis and Entity Defendants Aluma Holdings LLC, Azure Trading LLC, Coastal Group Holdings, Inc., Greyhawk Equities LLC, Leonidas Group Holdings LLC, The Leonidas Group LLC, Nismic Sales Corp., Perlinda Enterprises LLC, and Spartan Group Holdings LLC.

[2] *See* First Amended Complaint ("FAC") ¶¶ 2-3.

[3] *See id.* ¶¶ 96-106.

[4] After filing this motion to dismiss, defendants filed an Answer to the Complaint (Dkt. No. 24).  Non-moving defendants also answered the Complaint (Dkt. No. 21).

Rule 10b-5, and for violation of Section 17(a) based on the allegations regarding Rule 144 because: (1) the SEC fails to adequately plead scienter; and (2) Defendants did not "make" the misstatement that the underlying corporate debt was a "security" as required to state a claim for fraud based on Rule 144.[5] The SEC argues that Defendants' motion is premature because resolution in their favor would not result in dismissal of any of the claims and, moreover, the allegations of fraud relating to the Rule 144 transaction are adequately plead. For the following reasons, Defendants' motion is denied.

## II. BACKGROUND

The SEC's allegations are as follows. Between at least 2007 and 2010, Defendants obtained and illegally resold the stock of dozens of Penny Stock Companies.[6] The stocks of these companies were penny stocks as defined by Section 3(a)(51)(A) of the Exchange Act, meaning, *inter alia*, that they traded below five dollars per share and were not listed on a national securities exchange.[7]

---

[5] Memorandum of Law in Support of Defendants' Motion to Dismiss Allegations of Fraud Arising Out of the Rule 144 Transactions ("Def. Mem.") at 2, 6.

[6] *See* FAC ¶ 33. The Penny Stock Companies traded only on the "over the counter" market and were quoted by OTC Markets Group, Inc., an electronic quotation and trading system, and had limited assets, low share prices, and little or no analyst coverage. *Id.*

[7] *See id.* (citing 15 U.S.C. § 78c(a)(51(A)).

No registration statements were filed in connection with either the initial issuance of shares to the Defendants, or Defendants' subsequent sale of shares to the public and no exemptions from registration were available to Defendants for their sales of those securities to the public.[8]

Defendants falsely claimed two exemptions from registration. Rule 504(b)(1)(iii) exempts from registration offers and sales of securities made "[e]xclusively according to state law exemptions from registration that permit general solicitation and general advertising so long as sales are made only to 'accredited investors.'"[9] Defendants do not, in the instant motion, contest the SEC's allegations with respect to Defendants' Rule 504(b)(1)(iii) transactions (the "Rule 504 Scheme") and this Opinion therefore does not address them further.[10]

Rule 144 permits a purchaser to resell unregistered securities if the purchaser has held the securities for a "holding period," usually of one year.[11] If certain criteria are met, the purchaser can satisfy the holding period by "tacking"

---

[8]   *See id.* ¶ 34.

[9]   *Id.* ¶ 35 (quoting 17 C.F.R. § 230.501(a)).

[10]  *See* Def. Mem. at 2. The alleged misrepresentations pertain to certain Entity Defendants' principal place of business and the stated purpose of acquiring the securities at issue. *See* FAC ¶¶ 37, 39-75.

[11]  *See* FAC ¶ 10 (citing 17 C.F.R. § 230.144).

back to the date the original stockholder acquired the unregistered security.[12] Rule 144 requires that the instrument held by the original stockholder be a "security." To evade Rule 144 requirements, Defendants made it appear that they had satisfied the holding period, when in fact they were converting a debt to a security and immediately reselling the stock (the "Convertible Debt Scheme").[13] This entailed searching the market for convertible "aged debt," – debt that had been on a penny stock issuer's books for the requisite Rule 144 holding period – purchasing the debt from the long-term creditors at a discount, and obtaining attorney opinion letters stating that the debts were securities and could be converted to stock certificates without restrictive legends because the original debt had been outstanding for over one year.[14] Defendants then promptly sold the unrestricted shares on the market.[15] Defendants did not satisfy Rule 144 because the original debt was not a security but rather was "akin to an 'IOU' for services rendered or compensation owed to a current or former affiliate of the issuer."[16] The SEC alleges that the "Individual Defendants, who were experienced securities

---

[12] *See id.*

[13] *See id.* ¶ 38.

[14] *See id.* ¶ 91.

[15] *See id.* ¶ 92.

[16] *Id.* ¶ 93.

professionals and sophisticated investors, knew or were reckless in not knowing that the debts were not securities."[17]

As relief for the alleged Convertible Debt and Rule 504 Schemes, the Commission seeks permanent injunctions against future violations of the securities laws, disgorgement of Defendants' illegal profits plus pre-judgment interest, accounting, civil penalties, penny stock bars and, as to Garber, a conduct-based injunction.[18]

## III. STANDARD OF REVIEW

### A. Rule 12(b)(6) Motion to Dismiss

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[19] "Such a statement must [] 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"[20] In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court

---

[17] *Id.* ¶ 91.

[18] *See id.* ¶¶ 33-34.

[19] Fed. R. Civ. P. 8(a)(2).

[20] *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *overruled in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-563 (2007)).

"must accept all non-conclusory factual allegations as true and draw all reasonable inferences in the plaintiff's favor."[21]

The court evaluates the sufficiency of the complaint under the "two-pronged approach" suggested by the Supreme Court in *Ashcroft v. Iqbal*.[22] Under the first prong, a court "'can . . . identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"[23] Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss.[24]

Under the second prong of *Iqbal*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[25] A claim is plausible

---

[21] *Simms v. City of New York*, No. 11 Civ. 4568, 2012 WL 1701356, at *1 (2d Cir. May 16, 2012) (citing *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008)).

[22] 556 U.S. 662, 678-79 (2009).

[23] *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). Accord *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

[24] *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 555).

[25] *Id.* at 679. Accord *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[26]

### B. Heightened Pleading Standard under Rule 9(b)

Federal Rule of Civil Procedure 9(b), "requires that the circumstances constituting fraud . . . shall be stated with particularity,'"[27] but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[28]

## IV. APPLICABLE LAW

### A. Section 10(b) and Rule 10b-5

Section 10(b) of the Securities Exchange Act of 1934 makes it illegal to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe . . . ."[29] Rule 10b-5 makes it unlawful, in connection with the purchase or sale of a security, to: (a) "employ devices, schemes or artifices to defraud;" (b) "directly or indirectly . . . make any

---

[26] *Iqbal*, 556 U.S. at 678 (quotation marks omitted).

[27] *Meridian Horizon Fund, LP v. KPMG (Cayman)*, 487 Fed. App'x 636, 639 (2d Cir. 2012) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007)).

[28] Fed. R. Civ. P. 9(b).

[29] 15 U.S.C. § 78j(b).

untrue statement of a material fact;" or (c) engage in transactions, practices or courses of business which [operate] as fraud or deceit upon any person."[30]

A Rule 10b-5 violation requires 'an intent to deceive, manipulate or defraud."[31] A plaintiff can plead scienter "'either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'"[32] The requisite "strong inference of fraudulent intent"[33] may arise where the complaint alleges "that the defendants: (1) benefitted in a concrete and personal way from the purported fraud[;] (2) engaged in deliberately illegal behavior[;] (3) knew facts or had access to information suggesting that their public statements were not accurate [;] or (4) failed to check information they had a duty to monitor."[34]

B.     Section 17(a)

---

[30]     17 C.F.R. § 240.10b-5.

[31]     *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 168 (2d Cir. 2000).

[32]     *SEC v. Mudd*, 885 F. Supp. 2d 654, 661 (S.D.N.Y. 2012) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006)).

[33]     *Ganino*, 228 F.3d at 169.

[34]     *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000).

The elements of a violation under Section 17(a)(1)-(3) are essentially the same as those of Rule 10(b) except that no showing of scienter is required for the SEC to obtain an injunction under subsections (a)(2) or (a)(3).[35]

## V. DISCUSSION

### A. Defendants' Motion Is Not Clearly Premature

The SEC argues that Defendants' motion does not implicate dismissal of a particular claim for relief, but is rather akin to a motion to strike *allegations* of scienter-based fraud arising out of the Convertible Debt Scheme.[36] However, if the Rule 144 allegations could expand the scope of the case or the relief, or serve as an alternative theory of liability – and the Complaint does not rule this out – then a motion to dismiss is an appropriate vehicle to address whether the SEC may proceed on this theory.

### B. The Complaint Adequately Alleges Scienter

The allegations in the FAC more than suffice to establish a strong inference of fraudulent intent. The FAC alleges that the Convertible Debt Scheme enabled Defendants to sell unrestricted stocks for at least one million dollars in

---

[35] *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999).

[36] *See* Plaintiff SEC's Opposition to Defendants' Motion to Dismiss Allegations of Fraud Concerning Rule 144 Transactions ("Pl. Opp.") at 4.

proceeds.[37] The motives alleged are not generalized profit motives, but rather suggest a "concrete and personal benefit to the individual defendants resulting [directly] from the fraud."[38] Defendants also had the opportunity, defined as the "means and likely prospect of achieving concrete benefits by the means alleged."[39] The FAC alleges that Defendants had the resources to scour the niche market of Penny Stock Companies for aged debt, purchase that debt at a discount,[40] retain attorneys to opine that the debt was a security eligible for conversion to unrestricted Penny Stock Company shares, and sell the securities promptly on the market.[41] The fact that the attorney letters were a precondition to the success of the scheme does not undermine the allegations of opportunity to commit fraud – rather, the fact of obtaining said letters, the sole purpose of which was to further the alleged scheme, supports the allegations of fraudulent intent.

---

[37] *See* FAC ¶ 92.

[38] *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001).

[39] *Novak*, 216 F.3d at 307.

[40] The SEC alleges that "[i]t is unreasonable to think a vendor would sell a note at more than a 90% discount [– the discount alleged as to one of the transactions –] if the vendor had already satisfied the Rule 144 holding period and thus could have converted the debt and sold the shares himself." Pl. Opp. at 9-10 n.5 (citing FAC ¶ 94).

[41] *See* FAC ¶¶ 91-95.

In addition, the SEC's allegations that Defendants are "experienced securities professionals and sophisticated investors" with decades of collective experience, and Garber's previous conviction for securities fraud are circumstantial evidence that Defendants were either conscious of or reckless in not knowing that the debt in question was not a security for the purposes of the Rule 144 exemption.[42]  In sum, particularly in light of the allegations regarding the Rule 504(b) scheme, the viability of which Defendants do not contest, the overall picture painted by the FAC creates a strong inference that Defendants possessed the requisite fraudulent intent in carrying out the Convertible Debt Scheme.

### C. The Fact that the Alleged Misstatements Were Made By Attorneys Does Not Bar the SEC's Fraud Claims

Defendants argue that the SEC's fraud claims fail because the alleged misrepresentations were made, not by Defendants but by attorneys in the form of opinion letters.  They rely on *Janus Capital Group, Inc. v. First Derivative Traders*, in which the Supreme Court held that only the "maker" of a missleading

---

[42]  *See id.* ¶¶ 17-20 (alleging that Garber, Yellin and Feinstein were each registered representatives who held multiple relevant licenses and each had close to twenty years of experience in the securities industry).  As Defendants concede, the fact that notes representing an open-account debt incurred in the ordinary course of business are not securities has been established since the Supreme Court's 1990 decision in *Reves v. Ernst & Young*, 494 U.S. 56, 65-66 (1990) – more than fifteen years before the alleged scheme commenced.  *See* Def. Mem. at 12.

statement could be held liable under Rule 10b-5(b).[43]  This argument is unavailing for several reasons.

*Janus* addressed Rule 10b–5*(b)*, which prohibits the "mak[ing]" of an untrue statement of material fact in connection with the purchase or sale of a security.  The textual basis for *Janus* does not extend to claims based on schemes to defraud under Rule 10b–5(a) and (c), which do not focus on the "making" of an untrue statement.[44]  By the same logic, *Janus* would not affect claims under Section 17(a)(1) which prohibits "employ[ing] any device, scheme, or artifice to defraud."[45]  While the SEC cannot bypass the elements necessary to impose misstatement liability under subsection (b) by labeling the alleged misconduct a

---

[43]   131 S. Ct. 2296, 2301-02 (2011).

[44]   *See SEC v. Pentagon Capital Mgmt. PLC*, 844 F. Supp. 2d 377, 421 (S.D.N.Y. 2012), as amended (Aug. 22, 2012) ("Accordingly, while Defendants were certainly aware of the misstatements made at their direction and behest by TW & Co. personnel, the allegations here hinge on Defendants' deceptive conduct") (citing cases).  *Accord SEC v. Boock*, No. 09 Civ. 8261, 2011 WL 5417106, at *2 (S.D.N.Y. Nov. 9, 2011).  *But see SEC v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011) ("Where the SEC is attempting to impose primary liability under subsections (a) and (c) of Rule 10b–5 for a scheme based upon an alleged false statement, permitting primary scheme liability when the defendant did not 'make' the misstatement would render the rule announced in *Janus* meaningless.").

[45]   *See SEC v. Stoker*, 865 F. Supp. 2d 457, 465 (S.D.N.Y. 2012) ("*Janus* implicitly suggests that Section 17(a)[] should be read differently from, and more broadly than, Section 10(b)" both because of the wording and because of the absence of a private right of action under 17(a)).

"scheme,"[46] the "core misconduct" here is not a misstatement.[47] As Defendants recognize, the basis for the Rule 144 fraud claims is that "the original debt was not a security."[48] The attorney opinions were a mere instrumentality of the "inherently deceptive act" of acquiring and illegally reselling the unregistered penny stock, which involved numerous steps including buying the penny stocks at a discounted price and dumping the penny stocks into the market.[49]

More importantly, assuming *Janus* does govern the SEC's Rule 10b-5 allegations,[50] the Supreme Court held that "the maker of a statement is the person

---

[46] *See SEC v. Alternative Green Techs., Inc.*, No. 11 Civ. 9056, 2012 WL 4763094, at *5 (S.D.N.Y. Sept. 24, 2011) (quoting *Kelly*, 817 F. Supp. 2d at 343).

[47] *Contrast with Kelly*, 817 F. Supp. 2d at 344 (declining to find scheme liability where "the alleged round-trip transactions by AOL between 2000 and 2003 are deceptive only because of AOL's subsequent public misrepresentations"); *SEC v. KPMG LLP*, 412 F. Supp. 2d 349, 377-78 (S.D.N.Y. 2006) (claims involving "issuance of clean audit opinions despite significant distortions in the issuer's financial statements, present a classic misstatement case") (distinguishing *SEC v. Zandford*, 535 U.S. 813, 820 (2002) (looting clients' brokerage accounts); *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153 (1972) (acting as market makers for securities sold at inflated prices)).

[48] Def. Mem. at 16.

[49] *Kelly*, 817 F. Supp. 2d at 343 ("Scheme liability under subsections (a) and (c) of Rule 10b-5 hinges on the performance of an inherently deceptive act that is distinct from an alleged misstatement.").

[50] It is disputed whether the restriction set forth in *Janus* applies in SEC enforcement actions. *See Pentagon*, 844 F. Supp. 2d at 421 ("There is no indication that the Court or Congress intended for actions brought by the SEC to be

or entity with ultimate authority over the statement, including its content *and whether and how to communicate it*."[51]  Thus, the Supreme Court rejected the notion that one who "provides the false or misleading information that another person then puts into the statement" could be liable under Rule 10b-5(b).[52]  Specifically, although investment advisers may have been responsible for the statements in their client's prospectus, they could not be held liable under Rule 10b-5(b) because the client itself was the ultimate maker of the statement through its issuance of the prospectus.  The Supreme Court clarified that, "[o]ne who prepares or publishes a statement on behalf of another is not its maker."[53]

      Drawing all reasonable inferences in favor of the SEC, the attorneys appear analogous to the investment advisors in *Janus* and Defendants to the client, whom *Janus* suggests *was* the maker of the statement.  Defendants solicited the advisory opinion and had "ultimate authority . . . over whether and how to

---

[] limited" by the *Janus* ruling which was "based on 'the narrow scope that we must give the implied private right of action' under Rule 10b–5 to private plaintiffs in contrast to the Commission."); *Stoker*, 865 F. Supp. 2d at 465 ("*Janus* implicitly suggests that Section 17(a)[] should be read differently from, and more broadly than, Section 10(b)" both because of the wording *and* because of the absence of a private right of action under 17(a)). *Contra Kelly*, 817 F. Supp. 2d at 343.

[51]    *Janus*, 131 S. Ct. at at 2302.

[52]    *Id.* at 2303.

[53]    *Id.* at 2302.

communicate it," at least in the context of the alleged scheme. The issuance of the advisory opinion at Defendants' behest did not further the scheme, it was only when Defendants presented the information in support of their ability to sell the penny stocks without registration that they had the intended effect.[54] Even under *Janus*, the "making" of these statements could be attributed to Defendants.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is denied. The Clerk of Court is directed to close this motion (Docket No. 14).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         April 22, 2013

---

[54] *See* Pl. Opp. at 13 (Defendants "used the incorrect opinion letters to facilitate the improper issue of unrestricted shares"). *See also* Def. Mem. at 9 n.2 (noting that transfer agents require an attorney opinion letter to remove the restricted legend from a Rule 144 stock).

## -Appearances-

**For the Securities and Exchange Commission:**

Paul G. Gizzi, Esq.
Andrew M. Calamari, Esq.
Haimavathi V. Marlier, Esq.
Michael D. Paley, Esq.
U.S. Securities and Exchange Commission
Three World Financial Center
New York, NY 10281
(212) 336-0077

**For Moving Defendants:**

Ira Lee Sorkin, Esq.
Amit Sondhi, Esq.
Lowenstein Sandler PC
1251 Avenue of the Americas
New York, NY 11020
(212) 262-6700