```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
SECURITIES AND EXCHANGE COMMISSION,  : 12 Civ. 9339 (SAS) (JCF)
                                     :
            Plaintiff,               :        MEMORANDUM
                                     :        AND  ORDER
    - against -                      :
                                     :
DANNY GARBER, MICHAEL MANIS,         :
KENNETH YELLIN, JORDAN FEINSTEIN,    :
ALUMA HOLDINGS LLC, COASTAL GROUP    :
HOLDINGS, INC., GREYHAWK EQUITIES    :
LLC, LEONIDAS GROUP HOLDINGS LLC,    :
THE LEONIDAS GROUP LLC, NISMIC       :
SALES CORP., THE OGP GROUP LLC,      :
PERLINDA ENTREPREISES LLC, RIO       :
STERLING HOLDINGS LLC, SLOW TRAIN    :
HOLDINGS LLC, and SPARTAN GROUP      :
HOLDINGS LLC,                        :
                                     :
            Defendants.              :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

The Securities and Exchange Commission (the "SEC") brings this action against, among others, Danny Garber, Kenneth Yellin, and Jordan Feinstein (the "individual defendants") and certain entities that they control, specifically the OGP Group LLC, Rio Sterling Holdings LLC, and Slow Train Holdings LLC (the "entity defendants").  The SEC now seeks production of the federal tax returns of the individual defendants.  These defendants oppose the SEC's application on the ground that the documents are protected from disclosure by the quasi-privilege accorded to tax returns.

1

Background

The factual background of the case is set forth at length in the decision of the Honorable Shira A. Scheindlin, U.S.D.J., denying the defendants' motion to dismiss the complaint. SEC v. Garber, __ F. Supp. 2d __, 2013 WL 1732571 (S.D.N.Y. April 22, 2013). I will highlight here only those facts relevant to the SEC's application.

According to the Complaint, between January 2007 and early 2010, "the [d]efendants purchased over a billion unregistered shares in dozens of penny stock companies . . . and illegally resold the shares to the investing public without complying with the registration provisions of the federal securities laws." (Complaint ("Compl."), ¶ 1). In part, this scheme involved false representations by the defendants that their purchases of the stocks were exempt from registration pursuant to Rule 504(b)(1)(iii) of Regulation D, 17 C.F.R. § 230.504(b)(1)(iii), of the Securities Act of 1933, 15 U.S.C. § 77a et seq. (Compl., ¶ 3). On the basis of these false statements, along with others, the defendants were able to obtain shares without restrictive legends that would have prevented them from immediately dumping the newly acquired shares on the market. (Compl., ¶¶ 5-6).

According to Rule 504(b)(1)(iii), offers and sales of securities are exempt from registration if they are made

2

"[e]clusively according to state law exemptions from registration that permit general solicitation and general advertising so long as the sales are made only to 'accredited investors . . . .'"  17 C.F.R. § 504(b)(1)(iii).  Accredited investors, in turn, include "[a]ny natural person whose individual net worth, or joint net worth with that person's spouse, exceeds $1,000,000" or "[a]ny natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year[.]"  17 C.F.R. § 230.501(a)(5), (6).  Furthermore, an entity may be an accredited investor if "all of the equity owners are accredited investors."  17 C.F.R. § 230.501(a)(8).

In its Request for Production No. 13, the SEC sought, among other things, the tax returns of the individual defendants. (Letter of Paul G. Gizzi dated May 31, 2013 ("Gizzi 5/31/13 Letter) at 3 & attached chart at 3-4).  The defendants objected on the grounds that the returns are confidential, proprietary, and irrelevant, and argued that the SEC could not overcome the quasi-privilege that protects tax returns from discovery in some circumstances.  (Gizzi 5/31/13 Letter, attached chart at 3-5). Subsequently, the individual defendants produced the first page of the tax returns, which summarize the taxpayer's income and adjusted

3

gross income, and maintained that these documents demonstrated that they qualified as accredited investors at the time of the transactions at issue. (Letter of Ira Lee Sorkin dated Sept. 16, 2013 ("Sorkin 9/16/13 Letter") at 2-3). The SEC, however, objected to the use of the first page of each return as evidence because they had not been authenticated and were incomplete and unreliable. (Sorkin 9/16/13 Letter at 3; Letter of Paul G. Gizzi dated Sept. 19, 2013, at 2). Judge Scheindlin then agreed to review the first pages together with the full returns in camera, along with affidavits addressing the authenticity of the documents. In an order dated November 13, 2013, she summarized her review. (Order dated Nov. 13, 2013 ("November 13 Order")). She noted that in all cases, the defendants attested that the returns provided were their true and correct tax returns, and in most instances their accountants corroborated this. (November 13 Order at 1-2). She further observed that Mr. Garber's returns showed both total income and adjusted gross income ("AGI") in excess of $300,000 for the years 2005-2010; that Mr. Feinstein's returns showed both total income and AGI in excess of $300,000 for the years 2006-2010; and that Mr. Yellin's returns showed both total income and AGI in excess of $300,000 for the years 2006-2009, but total income of $187,388 and AGI of $144,904 for 2010. (November 13 Order at 1-2). Judge Scheindlin noted that this "review was conducted in response

to the SEC's concern about the authenticity of the first page of the tax returns," and she emphasized that she "has not yet ruled on the legal question of whether the [individual defendants] qualify as accredited investors." (November 13 Order at 2-3). Finally, in light of the SEC's arguments with respect to the reliability of the documents, she directed the parties to brief the issue of whether the SEC should be permitted to examine the complete tax returns. (November 13 Order at 3). The parties then submitted additional letter briefs, and the issue was referred to me for determination.

<u>Discussion</u>

While tax returns are not formally privileged, courts exercise discretion in ordering their disclosure. See <u>Michelman v. Ricoh Americas Corp.</u>, No. 11 CV 3633, 2013 WL 664893, at *2 (E.D.N.Y. Feb. 22, 2013) (finding courts "reluctant" to order discovery of tax returns); <u>GMA Accessories, Inc. v. Electric Wonderland, Inc.</u>, No. 07 Civ. 3219, 2012 WL 1933558, at *8 (S.D.N.Y. May 22, 2012) (same); <u>Chen v. Republic Restaurant Corp.</u>, No. 07 Civ. 3307, 2008 WL 793686, at *2 (S.D.N.Y. March 26, 2008) (same); <u>Carmody v. Village of Rockville Centre</u>, No. 05 CV 4907, 2007 WL 2042807, at *2 (E.D.N.Y. July 13, 2007) (same); <u>Rahman v. Smith & Wollensky Restaurant Group, Inc.</u>, No. 06 Civ. 6198, 2007 WL 1521117, at *7 (S.D.N.Y. May 24, 2007) (same); <u>SEC v. Militano</u>, No. 89 Civ. 572, 1991 WL 270449, at *3 (S.D.N.Y. Dec. 12, 1991) (finding courts

"cautious" in ordering production). This caution is based on both "the private nature of the sensitive information" and "the public interest in encouraging filing by taxpayers of complete and accurate returns." Smith v. Bader, 83 F.R.D. 437, 438 (S.D.N.Y. 1979); accord Fierro v. Gallucci, No. 06 CV 5189, 2009 WL 606191, at *1 (E.D.N.Y. March 9, 2009); Chen, 2008 WL 793686, at *2; Ellis v. City of New York, 243 F.R.D. 109, 111 (S.D.N.Y. 2007); Rahman, 2007 WL 1521117, at *7; Carmody, 2007 WL 2042807, at *2. Accordingly, in order to reconcile these concerns with liberal pretrial discovery, courts have developed a two-prong test: tax returns may be ordered disclosed where (1) they are relevant to the subject matter of the action, and (2) there is a compelling need for their disclosure because the information is not otherwise readily obtainable. Trilegiant Corp v. Sitel Corp., 272 F.R.D. 360, 368 (S.D.N.Y. 2010); Fierro, 2009 WL 606191, at *1; Chen, 2008 WL 793686, at *2; Rahman, 2007 WL 1521117, at *7.

The party seeking disclosure bears the burden of demonstrating relevance, and the SEC has met that burden here. It is undisputed that one of the key issues in this case is whether the entity defendants were accredited investors that could purchase unregistered securities, and the determination of that question depends, in turn, on whether the individual defendants were accredited investors. (Sorkin 9/16/13 Letter at 2). And, because

their status as accredited investors relates to an exemption from the registration requirements, the ultimate burden of proof will be on the defendants.  See <u>SEC v. Ralston Purina Co.</u>, 346 U.S. 119, 126 (1953); <u>SEC v. Cavanagh</u>, 445 F.3d 105, 111 n.13 (2d Cir. 2006); <u>SEC v. Mattera</u>, No. 11 Civ. 8323, 2013 WL 6485949, at *11 (S.D.N.Y. Dec. 9, 2013).  The individual defendants have sought to satisfy that burden by proffering the first page of their respective returns to prove their income.  (Sorkin 9/16/13 Letter at 2-3). The balance of each tax return likewise reflects their income and so is equally relevant.[1]

Analysis of the second prong is more complex.  Who bears the burden on this prong is a matter of some dispute.  One court has suggested that while "some courts shift the burden to the party opposing the discovery to establish the existence of alternative sources for the information . . . the modern trend appears to require the party seeking discovery to demonstrate both relevancy and a compelling need."  <u>Carmody</u>, 2007 WL 2042807, at *2 (citations

---

[1] The defendants argue that the returns (apart from the first page) are "inherently irrelevant" because only the amount of income is pertinent to accredited investor status, not how the income was earned.  (Sorkin 9/16/13 Letter at 2-3).  But there is ample information throughout the returns that directly reflects the amount of each defendant's income.  In effect, the defendant's argument more properly goes to the second prong -- whether there is a compelling need for the entire return once the first page has been obtained.

omitted).  I respectfully disagree.  While the cases indeed diverge, it is hard to discern any trend.  Some cases clearly place the burden on the party resisting disclosure. See Rahman, 2007 WL 1521117, at *7; United States v. Bonanno Organized Crime Family of La Cosa Nostra, 119 F.R.D. 625, 627 (E.D.N.Y. 1988); SEC v. Cymaticolor Corp., 106 F.R.D. 545, 548 (S.D.N.Y. 1985).  Others just as plainly impose the burden on the discovering party. See Fierro, 2009 WL 606191, at *1; Hamm v. Potamkin, No. 98 Civ. 7425, 1999 WL 249721, at *2 (S.D.N.Y. April 28, 1999).  And some cases that state that the burden is on the discovering party do so because they misread earlier precedent. See GMA Accessories, Inc., 2012 WL 1933558, at *8 (citing Ellis, 243 F.R.D. at 111, for proposition that burden is on discovering party); Ellis, 243 F.R.D. at 111 (mistakenly citing Rahman, 2007 WL 1521117, at *7 for same proposition).

In any event, the courts that place the burden on the party resisting disclosure have the better of the argument.  Because that party is the originator of tax returns, it is generally in a better position to suggest alternative sources for the information they contain.  Once it has done so, of course, the requesting party is free to argue that the proposed alternative is in some respect inadequate.  See Sabatelli v. Allied Interstate, Inc., No. 05 CV 3205, 2006 WL 2620385, at *1 (E.D.N.Y. Sept. 13, 2006) (finding no

compelling need where information sought could be obtained through deposition). That is, in effect, what has occurred here. The defendants contend that the first page of the tax returns is a sufficient alternative to producing the returns in their entirety, while the SEC maintains that it is not.

The tenuousness of the defendants' argument is most apparent with respect to Mr. Yellin's returns. The defendants contend that "[a]lthough Mr. Yellin and his then wife only reported $187,388 in total income for 2010, Mr. Yellin reasonably anticipated making over $300,000 jointly with his spouse in 2010 based on prior years' income, and thus Mr. Yellin still met the accredited investor test." (Letter of Ira Lee Sorkin dated Nov. 21, 2013, at 2 n.1). But the reasonableness of Mr. Yellin's expectations depends not only on the amount of income he earned in prior years, but also on the nature and sources of that income. If some sources were destined to expire, for example, then it would not have been reasonable for Mr. Yellin to anticipate equivalent income in 2010. Indeed, if demonstrating qualifying income alone in the prior two years were enough to qualify an accredited investor in the third year, the "reasonable expectation" requirement would be meaningless.

Nor is the first page of the each return a sufficient substitute for the full returns of Mr. Garber and Mr. Feinstein.

By raising the accredited investor defense, the defendants have placed their income in issue.  Some courts have suggested that this provides an alternative ground for requiring disclosure of tax returns, independent of the two-prong test.  See <u>Hazeldine v. Beverage Media, Ltd.</u>, No. 94 Civ. 3466, 1997 WL 362229, at *4 n.1 (S.D.N.Y. June 27, 1997); <u>Bonanno</u>, 119 F.R.D. at 627 n.2; <u>Cymaticolor</u>, 106 F.R.D. at 548 n.2.  But the protection afforded to tax returns should not depend on the fortuity of which party raised the issue to which they might be relevant.  Rather, it should turn on whether the party seeking discovery has an adequate ability to address that issue without obtaining the returns.

   Here, the SEC might be unable to demonstrate compelling need if accredited investor status were defined according to a specific line on the first page of the tax returns.  But it is not. According to the SEC release discussing the adoption of the current rules, "[t]he test is no longer keyed to the federal tax return." Revision of Certain Exemptions from Registration for Transactions Involving Limited Offers and Sales, SEC Release No. 6389, 24 SEC Docket 1166, 1982 WL 35662, at *9 (March 8, 1982).  The original proposal to base qualification on adjusted gross income was rejected in favor of a standard based on "income."  <u>Id.</u>  As the SEC release states, "[t]he rule as adopted does not define the term 'income.'  Rather than adopting a definition, the Commission has

determined to utilize a flexible approach, thereby avoiding the issues raised by inclusion in the rule of federal tax law concepts." Id. Since determining income, and thereby evaluating whether the defendants are accredited investors, cannot be accomplished merely by reference to a particular figure on the first page of the tax returns, it would be fundamentally unfair to foreclose the SEC from access to the balance of the returns.

To be sure, if an individual's adjusted gross income exceeds the level to qualify as an accredited investor, then his income is likely to as well, since AGI generally reflects total income minus certain adjustments. Nevertheless, because "income" for purposes of the SEC rule is not moored to the tax law, the SEC should be free to argue that particular items appearing as income in the tax returns should not be counted toward accredited investor status. Unless it can gain access to the full returns, it is deprived of that argument.

Furthermore, even if the term "income" were defined identically for tax and accredited investor purposes, the SEC should not be precluded from exploring the reliability of the information contained on the first page of the returns. The defendants argue that no one would rationally overstate their income on their tax returns. This is, of course, generally true. But if the defendants were indeed engaged in a scheme as

11

potentially lucrative as the SEC alleges, they would have had a substantial incentive to appear to qualify as accredited investors, even at the cost of paying some additional taxes. It simply cannot be assumed that the income figures reflected on the first page of the defendants' tax returns are accurate, and the SEC is entitled to the balance of the returns to test their reliability.

Conclusion

For the reasons discussed above, the SEC's application is granted and the defendants' objections to producing their complete tax returns are overruled. The defendants shall therefore produce the returns within five days of the date of this order, subject to any confidentiality order agreed upon by the parties and entered by the Court.

SO ORDERED.

*James C. Francis IV*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       January 7, 2014

Copies mailed this date:

Paul G. Gizzi, Esq.
Andrew Matthew Calamari, Esq.
Haimavathi Vardan Marlier, Esq.
Michael David Paley, Esq.
U.S. Securities and Exchange Commission
3 World Financial Center, Suite 400
New York, NY 10281

Kevin P. McGrath, Esq.
Securities and Exchange Commission
New York Regional Office
Brookfield Place, 200 Vesey Street, Suite 400
New York, NY 10281

Ira Lee Sorkin, Esq.
Amit Sondhi, Esq.
Lowenstain Sandler PC
1251 Avenue of the Americas
New York, NY 10020

Edward J.M. Little, Esq.
David B. Shanies, Esq.
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004